## FARMERS & MERCHANTS NATIONAL BANK OF EUREKA v. EUREKA LAND & STOCK COMPANY.

No. 3098

September 4, 1935.                49 P. (2d) 354.

*Thatcher & Woodburn,* for Appellants:

*Milton B. Badt,* for Respondent:

# OPINION

By the Court, COLEMAN, J.:

This is a suit instituted by Eureka Land & Stock Company against Farmers & Merchants National Bank of Eureka, to set aside two real estate mortgages. Judgment was rendered in favor of the plaintiff, from which and an order denying a motion for a new trial, the defendant appealed. We will refer to the parties as plaintiff and defendant.

In the early part of 1932 plaintiff was the owner of large land and livestock holdings in Eureka County, of the value of over $250,000. It owed about $125,000, of which sum $69,500 was secured by a chattel mortgage on the livestock. It is conceded that, covering a period of years, down to July 7, 1932, I. Sara was the president, and I. Sara, Jr., was the secretary and treasurer of plaintiff company, and it is contended by defendant that they continued to be such officers until after the execution of the mortgages in question. The plaintiff executed and delivered to the defendant its three promissory notes, of the dates and amounts following: April 6, 1932, $2,500; April 20, 1932, $2,500; June 3, 1932, $1,500—which money was used for the benefit of plaintiff. On September 13, 1932, a note was given by plaintiff to defendant aggregating the amount of said three notes, in the sum of $6,710, being principal and interest, to secure which one of the mortgages sought to be canceled was given. The other mortgage in question is dated September 10, 1932, payable to Pierre Laxague, for $3,500, and assigned, together with the mortgage securing it, to the defendant.

The plaintiff having reached the point where dissensions arose and where it seemed impossible to raise

funds to carry on its business, all of the stockholders signed a written consent, of date July 7, 1932, for the holding of a special meeting of stockholders to be held on the date mentioned for the purpose of electing directors and the transaction of other business.

The minute book of the company, signed by I. Sara, president, and I. Sara, Jr., secretary, shows that pursuant to said unanimous consent a special meeting of plaintiff company was held on July 7, 1932, at which Leon Ardans, Peter Ardans, and Fermin Espinal were elected directors of plaintiff. It further appears from the minutes of said meeting that the officers were directed to make an effort to borrow money and to refinance the company. It further appears that on July 7, 1932, I. Sara, I. Sara, Jr., and Leon Ardans tendered their resignations as officers and directors of the company, which were accepted, and that Leon Ardans was elected president, Peter Ardans was elected vice president, and Fermin Espinal was elected secretary-treasurer. It also appears from the minutes of the plaintiff that on the 19th day of July, 1932, a contract was entered into between plaintiff, as party of the first part, Leon Ardans, Peter Ardans, Fermin Espinal, and Pierre Laxague, the said Leon Ardans and Fermin Espinal, both individually and as officers of the company, second parties, and Isadore Sara and Isadore Sara, Jr., as third parties, wherein it was agreed, among other things, that the third parties were to surrender all their stock in first party and all claims against it, in consideration of the conveyance to them by first party of certain real and personal property.

It is further provided in said contract: "That in the event of any of the contingencies as herein set forth cannot be accomplished, to the end that these presents and this contract cannot be fully consummated, carried out and fulfilled, then and in that event any and all obligations and liabilities created hereunder shall absolutely be void and of no effect, and all parties shall be released from the operation of any covenants or clauses

hereof and the said corporate proceedings, whether carried out or not, shall be of no effect, and the said parties shall be absolutely restored to their respective stockholders and office holdings to such extent as if these presents, or the said minutes of directors and stockholders, or the said resignations had not been executed."

It is further provided in said contract that should the plaintiff fail to negotiate the loan contemplated, in its effort to refinance itself within the period of sixty days from its date, that said agreement shall be of no further force or effect, and that the parties "in such event shall be restored to their former estates as hereinbefore referred to."

■ The first question to be disposed of is the contention of defendant that I. Sara and I. Sara, Jr., were president and secretary, respectively, of the plaintiff at the time they executed the mortgages, and even if not, the defendant, having been furnished some years before with a copy of a resolution adopted by plaintiff authorizing I. Sara, as president, and I. Sara, Jr., as secretary, to borrow money in its behalf and to execute mortgages to secure the same, in which resolution it is provided that such power and authority shall continue until written notice of revocation has been delivered to the defendant, and no such written notice having been given it, the plaintiff cannot prevail.

■ There is no merit in the contentions, for the reason that Sara and Sara, Jr., were not officers of plaintiff and had no authority to execute the mortgage at the date of its execution. By their own written signatures they had tendered their resignations on July 7, 1935, which had been accepted and their successors elected and were in the exercise of the duties of their offices at the time the mortgages were given. This is not disputed, except insofar as the date of the stockholders' and directors' meeting at which the action mentioned was taken, for if the wrong date is given, it is clear that the meetings were held long before the execution of the mortgages. As to the contention that no

written notice was given defendant and that it had no actual notice of the election of the new officers, we may say that there is no contention that it had written notice, but there is positive evidence to the effect that it had actual notice. It is true that there is a sharp conflict in the testimony on this point, and if we were deciding the question in the first instance, we would be inclined to hold contrary to the finding of the trial court, but it was the duty of the trial court to determine this question, and, under the law, there being substantial evidence to support the finding, we are bound by it, in the circumstances. Consolazio v. Summerfield, 54 Nev. 176, 10 P. (2d) 629. In this connection it is said that since the agreement of July 19, 1932, provides that in case of failure of the plaintiff to refinance itself within sixty days the Saras should be restored to their former position, that such refinancing was not successful until long after that date. The exact language of the agreement, as quoted above, is that in case of the failure to refinance within sixty days that the Saras "shall be restored to their former estate," whatever that may mean. Whatever else may be said on this point, the Saras were not officers on September 12, 1932, and could have become such by their reelection only. They have never been reelected, nor is it so contended.

■■ The next contention of defendant is that plaintiff is estopped from asserting the illegality of the mortgages in question. In State ex rel. Thatcher v. Justice Court, 46 Nev. 133, 207 P. 1105, and other cases, we recognized the rule to be that before one can successfully urge estoppel he must show that he has been induced by the adverse party to change his position to his detriment. In determining whether or not defendant established estoppel, we must bear in mind that the burden of proving estoppel is upon the defendant. Schlitz Brew. Co. v. Grimmon, 28 Nev. 235, 81 P. 43.

The trial court having found as a fact that the defendant had actual notice of the change of officers of

plaintiff company, which is conclusive upon us, from which it follows that Sara and son had no authority to execute the mortgages, what has the plaintiff done, since the election of the new officers of the plaintiff, to justify the plea of estoppel?

■ As we understand the contention of defendant, it is that the acceptance of the new note of September 12, 1932, for $6,710 constitutes such change of position, to defendant's detriment, justifying the defense of estoppel. There is not a scintilla of evidence in the record indicating that the defendant was threatening suit or other action, or that Sara and son, acting in behalf of defendant, sought or suggested the giving of the new note and mortgage; but the inference from the entire record is that those documents were executed at the solicitation of defendant, and for the purpose of gaining a vantage ground it did not theretofore occupy. In this situation we do not see how it can consistently be said that defendant changed its position to its injury. From the entire record the only deduction to be made from the situation is that had the defendant brought suit against the plaintiff, bankruptcy proceedings would have followed, which, we infer from the testimony of the cashier of the defendant, would have been disastrous.

What we have said applies to both mortgages, and disposes of defendant's different theories as to estoppel.

■ It is next contended that the trial court erred in sustaining plaintiff's demurrer to paragraph 2 of defendant's third defense, which alleges a failure to file in the office of the secretary of state a certain certificate required, as contended, by section 85 of the corporation act of 1903 (Stats. 1903, c. 88), as amended in 1919 (Stats. 1919, p. 25, c. 16). Plaintiff contends that the act of 1925 (Stats. 1925, c. 177) repeals the 1903 act. It was evidently on this theory that the lower court sustained the demurrer. We are inclined to the view that section 1 of the 1925 act pertains to corporations organized after its approval, except certain corporations specifically excepted, to which class plaintiff

does not belong; however, we do not decide the question, defendant having waived it by answering, since the demurrer did not go to the jurisdiction of the court or to the failure to state a defense, but to the ability of the plaintiff to sue. Hardin v. Elkus, 24 Nev. 329, 53 P. 854.

■ Counsel for the defendant contend that the court erred in admitting in evidence the minute book of plaintiff containing the minutes of June 7, 1932, on the ground that the meeting was not actually held on that day. It does not positively appear that a meeting was held on that particular day, but it does appear that all of the officers and stockholders signed an agreement for the holding of a meeting on that day to do the very thing which appears from the minutes to have been done, and the existing officers signed the minutes, certifying to the holding of the meeting and the transaction of the business which was contemplated should be transacted on that day. No error was committed by the ruling.

We have not discussed in detail the numerous assignments of error relied upon, but have disposed of the salient points involved in the appeal and which must control.

Judgment affirmed.