THE FARMERS & MERCHANTS NATIONAL BANK OF EUREKA, a National Banking Association, Appellant, v. GEORGE SPRINGMEYER, Respondent.

No. 3175

December 2, 1937.                    73 P.(2d) 825.

*Walter Rowson,* for Appellant:

*George Springmeyer,* in pro per., *Sallie R. Spring-meyer* and *Bruce R. Thompson,* for Respondent:

## O P I N I O N

By the Court, COLEMAN, C. J.:

This is an action to recover on a promissory note executed by the defendant. Plaintiff has appealed from an order denying its motion for a new trial, entered after judgment in favor of defendant, and from the judgment.

The parties will be referred to as plaintiff and defendant, as designated in the trial court.

The undisputed facts, so far as material, are:

On April 15, 1931, the defendant executed his note for $3,500, payable to Nevada Savings & Trust Company. On that day the defendant received the sum of $3,500, which was deposited to his credit in the Reno National Bank. At the time of this transaction, the Reno National Bank and the Nevada Savings & Trust Company occupied the same offices and had the same officers; J. Sheehan being at the time the vice president and

manager of both of said banks, and president of the plaintiff bank. On the day of the execution of the note in question, this plaintiff had on deposit to its credit in the Reno National Bank a sum greatly in excess of $100,000. On the day of the execution of the note, the original payee of the note, acting through J. Sheehan, its manager, indorsed it in blank, without recourse, and delivered it to the Reno National Bank; and on the same day said last-named bank sent the note to plaintiff bank, accompanied by the following letter:

"The Reno National Bank
"Reno, Nevada

"April 15, 1931.

"Farmers & Merchants National Bank, Eureka, Nevada.

"Gentlemen: We charge your account and enclose note of George Springmeyer dated April 15, 1931, $3500.00, secured by 14,400 shares of H. H. Springmeyer Land, Development & Livestock Company, represented by certificate No. 28, which certificate we are enclosing herewith. This stock we believe to be worth at least $1.50 per share.

"We advised Mr. Springmeyer that in case we desired the note paid, we would give him 30 days notice.

"Yours very truly,

"JS: W          "J. Sheehan, Vice President.
"Reg."

About June 1931 the defendant transferred an account which he had theretofore kept in the First National Bank in Reno, which has at all times been solvent, to the Reno National Bank, which last-mentioned bank failed to open for business on November 1, 1932, and thereafter a receiver was appointed to take charge of the assets thereof and to liquidate the same. On the 1st day of November 1932 the defendant had on deposit to his credit in said Reno National Bank the sum of $2,044.38, and there was at said time on deposit in said bank to the credit of defendant's wife the sum of

$151.12, which was community property, aggregating the sum of $2,195.50. On November 7, 1932, the defendant interviewed the said Sheehan, in said Reno National Bank's offices, and demanded that the amount of his and his wife's deposits be set-off against his said note, and was then informed for the first time that the note in question had been assigned to the plaintiff. It further appears that from time to time the Reno National Bank sent to defendant, upon its regular form, at the top of which is printed "Statement of Interest Due to Reno National Bank, Reno, Nevada," a statement showing interest becoming due on said note; one of which being a notice showing interest due from June 30, 1932, to December 31, 1932.

The evidence shows without question that at all times mentioned the said Sheehan was an officer of several banks.

In addition to the above undisputed facts, there is certain disputed testimony upon which the court made findings in favor of the defendant, to which we will allude.

The defendant pleaded in his answer several defenses, among which were estoppel. He also pleaded a cross-complaint. The trial court made findings of facts and conclusions of law supporting said plea of estoppel and cross-complaint, and entered judgment accordingly.

The trial court found, inter alia, the following facts:

That all of the transactions relative to said note were had between Mr. Sheehan and defendant; that the Reno National Bank was not a stranger to said transactions, in that on or about June 15, 1931, it demanded payment thereof from defendant; that defendant, "by reason of a conversation with and a demand for payment by Mr. Sheehan as Vice President, Director and Executive Manager of the Reno National Bank, and by reason of said loan and on account of some question or doubt as to the soundness of the loan and of the amount of protection for said Reno National Bank, transferred and changed his account from the First National Bank in

Reno and promised he would keep the account sufficiently large to protect the Reno National Bank so that it would be unnecessary to sell the collateral mentioned and described in the note, and in that said Reno National Bank continuously, from April 15, 1931, until it was placed in the hands of a receiver on December 12, 1932, mailed to defendant notices of the Reno National Bank that interest was due, and in that the Reno National Bank accepted from defendant checks made payable to the Reno National Bank" on account of principal and interest upon said note.

The court further found:

"* * * And defendant transferred his account from the First National Bank to the Reno National Bank solely on account of and in reliance upon the said representations, which were believed by defendant; and that solely as the result of such representations and the reliance defendant placed thereon he was injured and suffered detriment in that otherwise he would not have believed the Reno National Bank was the owner and holder of the note, and he would not have transferred his account from the said First National Bank, which at all times has been and is solvent, to the Reno National Bank, and in that otherwise he would not have kept in said Reno National Bank the deposits amounting to $2,195.50 in his and his wife's names, which are claimed by him as offsets to the said note upon which this action is brought, and in that otherwise he would have protected himself in the premises either by keeping his accounts as theretofore in the solvent First National Bank, or by making a loan elsewhere, or by keeping his accounts in plaintiff's bank in order to protect himself in an offset. * * *

"That plaintiff was not an innocent purchaser for value and is not a holder in due course of said note and did not take the said note in good faith but on the contrary did take it surreptitiously and with the intent and purpose of depriving defendant of his rights to set-off and counter-claim his and his wife's deposits in the

Reno National Bank, and plaintiff did take said note with full notice and knowledge of the said oral agreement to the effect that defendant should have thirty days' notice of demand for payment òf said note, and plaintiff, through the said J. Sheehan as its President, Director and Agent, did intentionally and deliberately represent to and hold out to defendant that the Reno National Bank was the owner and holder of said note. That plaintiff, by permitting the Reno National Bank and said J. Sheehan to carry on the said transactions without disclosing plaintiff to be principal, enabled the said Reno National Bank and said J. Sheehan to perpetrate upon defendant the fraud whereby defendant was led to believe and did believe that the Reno National Bank was the owner and holder of the said note, and whereby and in reliance upon which defendant changed his deposit from the First National Bank to the Reno National Bank and at all times kept on deposit therein an amount of $2,195.50, claimed as an offset, which amount defendant otherwise would not have kept on deposit in said Reno National Bank."

The court also found in support of defendant's cross-complaint as follows: "That on or about May 2, 1934, plaintiff sent to defendant a written statement that the sum of $750.00 was then due on account of said note. That on or about June 1, 1934, plaintiff sent to defendant a written statement that the sum of $110.33 was due on account of interest on said note. That on or about December 1, 1934, plaintiff sent to defendant a written statement that the sum of $90.00 was due on account of interest on said note. That in truth and in fact, said sums of $90.00 and $110.33 never have been due on account of interest on said note, and the sum of $630.00, instead of the sum of $750.00 was the total balance due on said note on December 2, 1934, and the sum of $320.33, that being the aggregate of said amounts of $90.00, $110.33 and $120.00, were overpayments made by defendant, who believed said statements to be accurate and correct, and who made said payments in good

faith and solely because of his said mistakes of fact. That plaintiff has not paid the said sum of $320.33, or any part thereof, to defendant."

The chief question for determination is whether the facts of the case warrant the conclusion that the plaintiff is estopped, for if such be the case, plaintiff cannot recover.

The law of estoppel is well settled in this state, in Farmers & Merchants Nat. Bank v. Eureka L. & S. Co., 56 Nev. 218, 49 P. (2d) 354, which simply follows the rule laid down in previous decisions of this court. In passing upon this question, we must necessarily refer to some of the facts above stated.

On the day defendant borrowed the money for which the note was given to Nevada Savings & Trust Company, and at all times thereafter, J. Sheehan was vice president and manager of said bank and of the Reno National Bank, and president of the plaintiff bank. All negotiations and talks concerning this transaction were with Sheehan in person. On the day the note was executed, the plaintiff had on deposit in the Reno National Bank a sum greatly in excess of $100,000. On the same day, the Nevada Savings & Trust Company indorsed the note without recourse and delivered it to the Reno National Bank. On that day, the last-named bank, acting through Sheehan, sent the note to plaintiff and charged its account with $3,500. In the letter of transmission, Sheehan stated that the 14,400 shares of stock deposited as collateral to secure the note was worth at least $1.50 per share, or the total sum of $21,600. In transferring this note to the plaintiff, Sheehan acted in behalf of both the Reno National Bank and the plaintiff. It is clear that he alone acted for the plaintiff, because no other officer of the plaintiff bank then knew of the existence of the note. Notwithstanding the fact that the $3,500 note was secured by collateral worth over six times the indebtedness, Sheehan, without disclosing the transfer of the note, influenced the defendant to transfer his account from a

solvent bank to one which later went into liquidation, and influenced defendant to continue to act under the misapprehension that the Reno National Bank was still the holder of the note in question, as is evidenced by the notice to defendant, above-mentioned, of interest payment due the Reno National Bank, very shortly prior to its closing. We do not think it necessary to review the evidence in this case at length. A casual reading of it suffices to justify us in saying there is substantial evidence to support the findings and conclusion of the trial court as to the plea of estoppel.

In this connection, it is contended by appellant that the evidence does not show that the Reno National Bank ever acquired title to the note in question. The letter of transmission to plaintiff was from the Reno National Bank, and the account of the plaintiff in that bank was charged with the face value of the note. We think the trial court was justified in its finding on this point, from a consideration of all the evidence.

Counsel for appellant asserts that under the rule stated in Strohecker v. Mutual B. & L. Ass'n., 55 Nev. 350, 34 P. (2d) 1076, the plaintiff was not chargeable with knowledge of the facts testified to. We took particular pains in that case to point out why the general rule there invoked did not apply. The facts in this case show that Sheehan, the president of the plaintiff bank, knew of every detail connected with the transaction; that he, in fact, alone of the officers of plaintiff bank, knew the circumstances. If the plaintiff is not chargeable with knowledge of all that transpired, then there can be no such thing as charging a corporation with knowledge of facts gained by an officer. We think the trial court reached the correct conclusion in this connection.

Coming to the question raised by the cross-complaint, having sustained the ruling of the trial court on the question of estoppel, the only question in this connection is whether defendant made the payments

testified to as the result of a mistake of fact. The findings of the court are based upon evidence which amply supports its conclusion. It needs no discussion.

For the reasons given, it is ordered that the judgment and order appealed from be affirmed; respondent to recover his costs.