MARK B. GARFF, RYBERG & GARFF CONSTRUCTION COMPANY, Also Known as GARFF, RYBERG & GARFF, a Partnership, and U.S. ENTERPRISES OF RENO, INC., a Nevada Corporation, Doing Business as GARFF AND ENTERPRISES, and FEDERAL INSURANCE COMPANY, a New Jersey Corporation, Appellants, v. J. R. BRADLEY COMPANY, a Nevada Corporation, and RAY HEATING PRODUCTS, INC., a Nevada Corporation, Doing Business as RAY HEATING & SHEET METAL COMPANY, Respondents.

No. 5335

January 23, 1968                    436 P.2d 428

[Rehearing denied February 16, 1968]

*Streeter, Sala & McAuliffe,* of Reno, for Appellants.

*Emile J. Gezelin,* of Reno, for Respondent J. R. Bradley Company.

*Guild, Guild & Cunningham,* and *Drennan A. Clark,* of Reno, for Respondent Ray Heating Products, Inc.

# OPINION

By the Court, THOMPSON, C. J.:

This is an appeal from summary judgments in favor of suppliers of materials and labor (J. R. Bradley Company and Ray Heating Products, Inc.) to a subcontractor (Monroe Plumbing and Heating), and against the general contractors (Ryberg & Garff Construction Company and U.S. Enterprises of Reno, Inc.) and their surety (Federal Insurance Company). The contractors and surety also appeal from the refusal of the district court to enter summary judgments for them.

The cases arise out of the construction of the Carson City law enforcement facility. The subcontractor failed to fully pay the suppliers. Consequently, the suppliers each brought suit upon the payment bond given by the general contractors and their surety pursuant to NRS 339.025(b). The amount claimed due each supplier is not disputed. A direct contractual relationship existed between each supplier and the subcontractor, thus placing each case within the provisions of NRS 339.035(2) providing for suit upon a payment bond only when a claimant has given the notices provided for by subparagraphs (a) and (b) thereof.[1] Neither claimant gave the

---

[1] NRS 339.035(2) reads: "Any claimant who has a direct contractual relationship with any subcontractor of the contractor who gave such payment bond, but no contractual relationship, express or implied, with such contractor, may bring an action on the payment bond only: (a) If he has, within 30 days after furnishing the first of such materials or performing the first of such labor, served on the contractor a written notice

30-day notice required by subparagraph (a). The general contractors, however, had actual knowledge of the matters specified in that subparagraph. Each claimant did give the 90-day notice required by subparagraph (b).

The general contractors and surety contend that compliance with the notice provisions is a precondition to a claim for relief on the bond. Since neither claimant gave the 30-day notice his claim for relief must fail. On the other hand, the claimants each argue that the coverage of the bond here given is broader than required by NRS 339.025(b),[2] and, upon the authority of Royal Indemnity Co. v. Special Service, 82 Nev. 148, 413 P.2d 500 (1966), recovery on the bond is allowable. Subordinately, the claimants suggest that actual knowledge on the part of the contractors of the matters specified in subparagraph (a) of NRS 339.035(2) worked an estoppel against, or a waiver by, the contractors of any right to rely upon the claimants' failure to give the 30-day notice.

In ruling for the suppliers and against the general contractors and surety, the district court did not reach the notice issue. That court reasoned that the holding of the Royal Indemnity case controlled this litigation and permitted recovery on the payment bond.

It is our opinion that the Royal Indemnity case is inapposite. It is also our view that the general contractors did nothing to create an estoppel or to waive their rights with regard to the 30-day notice requirement, and that compliance by the suppliers with such requirement is a precondition to suit on the bond. Accordingly, we reverse the summary judgments entered below, and remand with direction to enter summary judgment for the general contractors and surety in each case.

which shall inform the latter of the nature of the materials being furnished or to be furnished, or the labor performed or to be performed, and identifying the person contracting for such labor or materials and the site for the performance of such labor or materials; and (b) After giving written notice to such contractor within 90 days from the date on which the claimant performed the last of the labor or furnished the last of the materials for which he claims payment. Each written notice shall state with substantial accuracy the amount claimed and the name of the person for whom the work was performed or the material supplied, and shall be served by being sent by registered mail, postage prepaid, in an envelope addressed to such contractor at any place in which he maintains an office or conducts business, or at his residence."

[2]NRS 339.025(b) provides: "A payment bond in an amount to be fixed by the contracting body, but not less than 50 percent of the contract amount. Such bond shall be solely for the protection of claimants supplying labor or materials to the contractor to whom the contract was awarded, or to any of his subcontractors, in the prosecution of the work provided for in such contract."

1.  In the Royal Indemnity case we held that the surety was liable on a bond where, by expressly denying liability for prior materials supplied, the surety, by implication, accepted liability for materials supplied to the contractor after the date of the bonding agreement. There, the bond afforded coverage for labor and material bills incurred by the contractor, even though the contractor's licensing statute pursuant to which the bond was furnished did not specifically require such coverage.

Royal Indemnity is not on point with the instant matter. The statute with which we are concerned (NRS 339.025(b)) requires the contractor to furnish a payment bond "solely for the protection of claimants supplying labor or materials * * * to any of his subcontractors, in the prosecution of the work provided for in such contract." The bond here in question was given pursuant to the statute and conformed with it. The condition of the bond is: "if said contractor * * * shall fail to pay, or cause to be paid, all just debts contracted by such contractor or any of his subcontractors, for labor performed upon or materials furnished for the contractor, * * * then said surety shall pay * * * ." The bond did not provide a broader coverage than contemplated by the statute, thus removing this case from the reach of the doctrine announced in Royal Indemnity Co. v. Special Service, supra.

2.  The statutory preconditions to suit upon a payment bond are specified in NRS 339.035(2)(a) and (b). The claimant must, within 30 days after furnishing the "first of such materials or performing the first of such labor" serve on the contractor a written notice of the nature of the materials furnished or labor performed, identifying the person contracting for the labor or materials, and the site of performance. The claimant must also, within 90 days after performing the last of the labor or furnishing the last of the material, give the contractor written notice of the amount claimed, and the name of the person for whom the work was performed or the material supplied. As before stated, the 30-day notice was not given by the claimants in this case; the 90-day notice was. The statute allows suit on the bond "only" if each notice is given.[3]

The claimants assert that the general contractors and surety are estopped to rely upon the failure of the claimants to comply

---

[3]We have not found other state statutes containing the "double notice" requirement. Such appears to be peculiar to Nevada. Consequently, case authority squarely on point is lacking.

with the 30-day notice requirement, since the contractors had actual knowledge that the claimants had performed work and furnished materials. Such actual knowledge does not create an estoppel. The statute places a duty upon the suppliers to give the notices therein specified. The contractors did not represent to the claimants that they need not comply with the notice requirements. Mere knowledge on the part of the contractors that the claimants were on the job or supplied materials does not constitute a representation by the contractors that the claimants need not follow the statute in perfecting their claims for relief on the bond. Absent such a representation, and a reliance thereon, the doctrine of estoppel cannot apply. Woods v. Bromley, 69 Nev. 96, 241 P.2d 1103 (1952); Farmers & Merchants National Bank v. Eureka Land & Stock Co., 56 Nev. 218, 49 P.2d 354 (1935); State ex rel. Thatcher v. Court, 46 Nev. 133, 207 P. 1105 (1922). Neither did the contractors waive their rights to insist that the claimants comply with the preconditions to suit upon the bond. Nothing appears in the record to suggest that this occurred.

As we see it, contractors frequently are aware of the identity of the suppliers of materials to subcontractors; frequently know the identity of those performing labor for the subcontractor. However, such awareness or knowledge, standing alone, does not erase the duty which the legislature has placed upon claimants to give the 30- and 90-day notices before becoming eligible to file suit on a payment bond given pursuant to NRS 339.-025(b).

The legislative provision for suit on the bond creates a remedy in circumstances where none existed before. It is not unfair to demand compliance with the preconditions for suit. Fairness does not suggest that we force the general contractor to pay twice (the subcontractor had been given funds with which to pay the suppliers) when the suppliers have failed to take essential steps to perfect their claims against the bond.

For the reasons expressed we reverse the summary judgments entered below, and remand with direction to enter summary judgments for the general contractors and surety in each case.

COLLINS, BATJER, and MOWBRAY, JJ., concur.

ZENOFF, J., dissenting:

This is an appeal by Ryberg & Garff Construction Company and U.S. Enterprises of Reno, Inc., general contractors, and their surety, Federal Insurance Company, from summary judgments granted in favor of J. R. Bradley Company and Ray

Heating Products, Inc., two suppliers of a subcontractor, C. J. Monroe Company.

On July 29, 1965 Garff and U.S. Enterprises were awarded a contract to build the Carson City law enforcement facility by the Board of County Commissioners of Ormsby County. Since this was a public building project, no lien rights could accrue. But in accordance with NRS 339.025(1)(b),[1] Garff and U.S. Enterprises secured a payment bond from Federal Insurance Company which bound that company to the board to pay all just debts contracted by the contractors or any subcontractors for labor and materials furnished for the contractors. The bond further provided that for all purposes all who had performed labor or furnished materials to any subcontractors would be deemed to have done the same at the instance of the contractor.

In connection with the project, Garff and U.S. Enterprises entered into a subcontract with C. J. Monroe Company for plumbing and heating. Monroe, in turn, contracted with Ray for the installation of the heating system and with J. R. Bradley Company for certain plumbing materials.

During the course of the construction, Monroe was unable to make full payment to Ray and Bradley. They commenced suits naming appellants as defendants, alleging the terms of the payment bond. Summary judgments were allowed in their favor from which the general contractors and their surety appeal.

The real question confronting us is the significance of the failure of both Ray and Bradley to serve written notices upon the general contractor within 30 days after they commenced their participation in the construction as required by NRS 339.035(2)(a).[2] The bond provides that payments under the bond would be made *provided that all persons claiming under*

---

[1]NRS 339.025(1)(b): "A payment bond in an amount to be fixed by the contracting body, but not less than 50 percent of the contract amount. Such bond shall be solely for the protection of claimants supplying labor or materials to the contractor to whom the contract was awarded, or to any of his subcontractors, in the prosecution of the work provided for in such contract."

[2]NRS 339.035(2)(a). "2. Any claimant who has a direct contractual relationship with any subcontractor of the contractor who gave such payment bond, but no contractual relationship, express or implied, with such contractor, may bring an action on the payment bond only:

"(a) If he has, within 30 days after furnishing the first of such materials or performing the first of such labor, served on the contractor a written notice which shall inform the latter of the nature of the materials being furnished or to be furnished, or the labor performed or to be performed, and identifying the person contracting for such labor or

*the bond shall have complied with the provisions of said act.* (Chapter 339, NRS.) The giving of a 30-day notice is one of those provisions and it is urged that the failure to so give precludes suit in this case.

That portion of the statute which requires 30 days' notice is peculiar to Nevada. Statutes of other states and the federal government by Section 270(b), 40 U.S.C.A., known as the Miller Act, require only that a 90-day notice be given after the completion of the construction.

Unquestionably, the 90-day notice requirement which was complied with here, is a condition precedent to commencing an action on a claim in connection with the job. The so-called "Miller" acts are remedial in nature and are entitled to a liberal construction in order to effectuate the legislative intent. That intent clearly is to protect those whose labor and materials go into public projects. But another apparent purpose and intent is to fix a time limit after which the prime contractor can make payment to its subcontractors with a certainty that he will not thereafter be faced with claims of those who furnished labor for and supplied material to the subcontractors. United States v. York Electric Construction Co., 184 F.Supp. 520, 522 (D.N.D. 1960); Maynard v. Ivey, 21 Nev. 241, 29 P. 1090 (1892) (relating to liens). While the statute uses the general term, "notice," it is intended to be in legal effect the presentation of a claim (United States v. York, supra) without which a cause of action under the statute cannot come into being. Zalk-Josephs v. Wells Cargo, 77 Nev. 441, 366 P.2d 339 (1961). Cf. Robinson Clay Product Co. v. Beacon Construction Co. of Mass. Inc., 159 N.E.2d 530 (Mass. 1959).

The function of the 30-day notice is to alert the contractor to the presence and participation of possible claimants. If the general contractor has actual knowledge of the services of the suppliers, no prejudice to the general contractor should result, absent special circumstances. Such warning notice does not bear the finality of the presentation of a claim as does the 90-day notice.

Actual knowledge consists not only of what one certainly knows, but also consists in information which he might obtain by investigating facts which he does know and which impose upon him a duty to investigate. Smith v. Pacific Mut. Life Ins.

---

materials and the site for the performance of such labor or materials; * * *."

Sec. 339.035(2)(b) provides: "After giving written notice to such contractor within 90 days from the date on which the claimant performed the last of the labor or furnished the last of the materials for which he claims payment * * *."

Co., 192 F.2d 248 (6th Cir. 1951); Shapiro v. Equitable Life Assur. Soc., 172 P.2d 725 (Cal.App. 1946); Brown v. Copp, 232 P.2d 868 (Cal.App. 1951); Greenlees v. Owen Ames Kimball Co., 66 N.W.2d 227 (Mich. 1954); James v. Hutchinson, 211 S.W.2d 507 (Mo.App. 1948); Hotel Hay Corp. v. Milner Hotels Inc., 39 N.W.2d 363 (Wis. 1949); Hodges v. Beardsley, 112 So.2d 482, 484, 485 (Ala. 1959). Actual knowledge is actual notice. Millowners' Mut. Life Ins. Co. v. Goff, 232 N.W. 504 (Iowa 1930); Bowman v. Bowman, 13 P.2d 1049 (Cal.App. 1932).

There was sufficient evidence in this case to show the general contractor had actual knowledge of the participation of Bradley and Ray. Before actual work was even started, prices were quoted to Monroe, the plumbing and heating contractor. A meeting was held attended by the general contractor's architects, one Elkins, president of the general contractor's corporation, and representatives from Ray, at which everyone agreed that Ray would furnish and install the heating, air conditioning and ventilating system for Monroe. After the job was commenced and the bond executed, Knudson, foreman for Ray Heating, was constantly on the job site and conversed often with Pierce, the job superintendent for appellant general contractor. One Fred Heap, sheet metal foreman and job superintendent for Ray Heating, had direct dealings with Pierce. When Ray became financially stressed he furnished the general contractor a status report as to its accounts regarding labor and materials furnished on the job. An assignment of the contract retention funds of Monroe was obtained from Monroe and was accepted by appellant general contractor.

With Bradley, a representative of U.S. Enterprises inquired of Bradley about Monroe's credit, stating his inquiry was made because Monroe had been awarded a subcontract by U.S. Enterprises to do the plumbing work for the Ormsby County jail construction and that Monroe was to obtain the necessary materials and supplies from Bradley for the purpose.

All of the foregoing took place before the construction began and during its progress.

While a party may deny expressly that he had notice of a fact, yet the circumstances may be such as to justify the court in concluding that he did not have written notice of a meeting with other subdivision lot owners, nevertheless, he attended the meeting, hence from the circumstances he had actual notice. Vaughan v. Fuller, 175 So.2d 103, 105 (Ala. 1965).

It is well-settled that notification *proposed to inform* may be replaced by actual knowledge. And this is especially so when

the knowledge has been acted upon without reliance upon the notifications' absence or its defects. Clark v. Wolman, 221 A.2d 687, 688 (Md. 1966) (reclassification of property).

Were we to hold that at the early stages of a public construction that the requirement of the 30-day notice is absolutely mandatory, the strict technical interpretation would be a departure from the legislative intent. Western Standard Uranium Co. v Thurston, 355 P.2d 377, 387, 388 (Wyo. 1960). Bond requirements should be liberally construed. Maryland Casualty Co. v. Ohio River Gravel Co., 20 F.2d 514 (4th Cir. 1927). Actual prejudice must be shown in order to discharge a surety. Fred Christensen, Inc. v. Hansen Construction Co., 21 P.2d 195 (Ore. 1933); Maryland Casualty Co. v. Ohio River Gravel Co., supra; Fidelity and Deposit Co. of Maryland v. John Gill & Sons Co., et al., 270 S.W. 700, 705, 706 (Mo. 1924).

Keeping in mind that this case is before us on appeal from summary judgments, Garff and U.S. Enterprises assert in their affidavit to support their own motion for summary judgment and to refute those of the respondents that they had no actual knowledge of who furnished the materials and labor to Monroe. But that mere conclusion (Dredge Corp. v. Husite Co., 78 Nev. 69, 369 P.2d 676 (1962), does not contest the affirmative allegations of both Bradley and Ray which recite the numerous personal contacts between their representatives and those of the general contractors before and during the job construction. From this record no material issue of fact is presented, only the issue of law as stated. According to the supporting affidavits the general contractors had actual knowledge that Bradley and Ray were furnishing materials and labor. The actual knowledge in this case served the function and purpose of the 30-day notice.

I therefore respectfully dissent.