C. Victor **BENSON**, Robert Corbett, Arthur Eisenberg, Jeffrey S. Morgan, James O'Connor as Trustees and Fiduciaries of the Teamsters Local 814 Pension, Annuity and Welfare Funds, Plaintiffs,

v.

**BROWER'S MOVING & STORAGE, INC., Defendant.**

No. CV 88–0470.

United States District Court, E.D. New York.

Dec. 4, 1989.

**32**

Michael Barrett, Friedman, Levy–Warren & Moss, New York City, for plaintiffs.

Robert S. Nayberg, Law Office of Martin H. Scher, Carle Place, N.Y., for defendant.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

This action was brought under Section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145 and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to collect contributions allegedly due and owing to employee benefit trust funds under a collective bargaining agreement concededly entered into between an employer and a union. Defendant employer challenges the enforceability of the collective bargaining agreement. Plaintiff moves for summary judgment on the ground that the delinquencies are established and that the employer's contract defenses are not assertable in a trust fund collection action. As explained below, the motion for summary judgment is granted.

## FACTS

The Local 814 Pension, Annuity and Welfare Funds ("the Funds") are multi-employer employee benefit plans within the meaning of sections 3(3) and (3)(37) of ERISA, 29 U.S.C. § 1002(3) and (37). The Funds were established pursuant to the terms of various collective bargaining agreements between Teamsters Local 814 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers ("the Union") and various employers, including defendant Brower's Moving & Storage, Inc. ("Brower's"), a New York corporation with its principal place of buisness in Port Washington, New York. The Funds are administered by two employer-designated trustees, two union trustees, and a court-appointed trustee in accordance with the terms of the collective bargaining agreements and the Funds' Agreement and Declaration of Trust ("Declaration").

It is undisputed that Brower's and the Union signed a series of collective bargaining agreements. The one which covers the period relevant to this action, April 1, 1983 through March 31, 1986, (the "agreement") was signed by Clifford W. Brower, an authorized agent of Brower's. The agreement by its terms requires Brower's to contribute to the Funds on a monthly basis on behalf of each covered employee of Brower's, based on the number of hours for which such employees were paid.

The agreement authorizes the Trustees of the Funds to take all actions necessary to effectuate the Funds' purposes, which include auditing employers to determine whether the required contributions have been made.[1] An audit of Brower's books on December 21, 1987 revealed that for the period April, 1983 through September, 1987, Brower's failed to contribute to the Funds on behalf of twelve of its employees for whom the collective bargaining agreement required contributions. The Funds have documented the deficiency, calculated

---

**1.** Section 31(A) of the agreement provides that: The Board of Trustees of the Pension, Welfare and Annuity Funds are hereby empowered and authorized to make, interpret and apply such rules and regulations governing the conduct and operation of the Fund as they shall deem proper, in accordance with the Agreements and delcarations of trust, including but not limited to the power to establish the amounts, form and methods of contributions to be paid to the Funds in order to maintain the Funds on solvent and sound actuarial basis, and to make all determinations of earned credits and benefits eligibility. In general, they shall have the full power to take such actions as are necessary to effectuate the purposes of the trusts.

Article V, Section 4 of the Declaration authorizes audits.

pursuant to the terms of the agreement, in the amount of $239,693.30. On or about January 14, 1988, the Funds' office manager sent a notice of Audit Delinquency to Brower's, demanding payment of the unpaid contributions plus interest and liquidated damages in accordance with the agreement and the Declaration of Trust.[2] Upon Brower's failure to reply to the notice, the Funds initiated this action.

Brower's does not concede the amount of the deficiency, although it does readily acknowledge that over a period of time it "has not abided by the terms" of the agreement. Brower's principal argument is that although it has failed to comply with numerous terms of the agreement, the Union has essentially ignored the noncompliance.[3] According to Brower's, (i) such failure to police the agreement amounts to abandonment, (ii) an abandoned agreement is invalid and unenforceable, and (iii) absent an enforceable collective bargaining agreement, Brower's has no obligation to contribute to the Funds. Brower's related argument is that the validity of the agreement is a subject within the exclusive jurisdiction of the National Labor Relations Board and that this Court therefore lacks jurisdiction over this entire action.

## DISCUSSION

Section 515 of ERISA, 29 U.S.C. § 1145, provides that

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

The liability created by section 515 may be enforced by the trustees of a plan by bringing an action in federal district court pursuant to Section 502, 29 U.S.C. § 1132. Section 502(g), 29 U.S.C. § 1132(g), provides for the mandatory award of prejudgment interest, liquidated damages and attorneys fees to plans who prevail in collection actions against employers.[4]

The question presented in this case is whether the defense of abandonment of the collective bargaining agreement may be interposed by the employer in a Section 515

---

**2.** As discussed *infra,* Section 502(g) of ERISA, 29 U.S.C. § 1132(g) provides:

(1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of the action to either party.

(2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce [section 515 of ERISA, 29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the Court shall award the plan—
(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of—
(i) interest on the unpaid contributions, or
(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.
For the purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none is provided, the rate prescribed under section 6621 of Title 26.

As authorized by Section 502(g), Article V, Section 3 of the Declaration provides:
(a) In the case of an Employer that fails to make the contributions to the Funds for which it is obligated, in accordance with the terms and conditions of its obligation, the Trustees may bring an action on behalf of the Funds pursuant to sections 502(g)(2) and 515 of ERISA to enforce the Employer's obligation.
(c) In any action under subsection (b) in which judgment is awarded in favor of the funds, the Employer shall pay to the Fund:
(I) the unpaid contributions,
(II) interest on the unpaid contributions, determined at the rate of 18% from the date due to the actual date of payment,
(III) liquidated damages as provided in Section 502(g)(c) of ERISA,
(IV) reasonable attorney's fees and costs of the action, and
(V) such other legal or equitable relief as the court deems appropriate.

**3.** Specifically, defendant contends that it has failed to comply with provisions concerning the hiring of union workers, vacation time and payscale requirements.

**4.** See note 2, *supra.*

collection action. Although the question has not been addressed by our Court of Appeals, several other circuits have rejected the raising of various contract defenses in delinquent contribution cases under ERISA. *See, e.g., Central States Pension Fund v. Gerber Truck Service, Inc.,* 870 F.2d 1148 (7th Cir.1989); *Bituminous Coal Operators' Association, Inc. v. Connors,* 867 F.2d 625 (D.C.Cir.1989); *Trustees of Colo. Statewide Ironworkers Fund v. A & P Steel, Inc.,* 812 F.2d 1518, 1522 (10th Cir.1987) (frustration of purpose defense rejected); *Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769, 773 (9th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987) (trustees entitled by Section 515 to enforce the terms of an agreement even where agreement rescinded because employer fraudulently induced by union); *Southern Calif. Retail Clerks Fund v. Bjorklund,* 728 F.2d 1262 (9th Cir.1984) (fraud in the inducement defense rejected). *See also Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960) (defense of breach of contract rejected).

Representative of these cases is the reasoning of the District of Columbia Circuit in *Connors.* As that court explained, an employee benefit plan such as the one involved here is a third party beneficiary of the collective bargaining agreement between the employer and the union. Thus, under traditional contract law, the benefit plan would step into the shoes of the union (promisee) and therefore be subject to any claim or defense that the promisor (employee) would have against the union. A pension fund, however, "is 'not a typical third party beneficiary' [but,] [l]ike Cinderella's stepsisters, it does not fit comfortably into the shoes of the promisee." 867 F.2d at 632 (citation omitted).

■ This misfit is no accident. Multiemployer employee benefit plans are something of the darlings of Congress. The legislative history of ERISA, and Section 515 in particular, has been extensively reviewed by numerous other courts, *see Con-*

*nors,* 867 F.2d at 632–33, including the Supreme Court, *see Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.,* 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988), and need not be repeated here. As all these courts have agreed, in Section 515 Congress "provided a statutory procedure intended to simplify the collection of pension contributions and to insulate the plan's entitlement to employer contributions from any potentially offsetting claims against the union." 867 F.2d at 632–33.

The *Connors* Court also expressly rejected the employer's suggestion that Section 515 created a duty to contribute that is merely coextensive with the contractual duty or that Section 515 collection actions could be defeated by contract defenses. 867 F.2d at 633–34. Employers are of course not required to create a pension plan, but once they execute a collective bargaining agreement that does create one there can be virtually no repudiation of the pension promise. The executed collective bargaining agreement contains a promise to contribute on which plans immediately rely, as they determine the level of benefits they promise to pay to employees based on the promised employer contributions. Federal pension law protects a plan's right to rely and enables its trustees to enforce the promise to contribute without participating in or awaiting the outcome of litigation between labor and management.

■ There can be no dispute that Congress intended to narrow substantially the scope of defenses available to employers in collection actions. Although Brower's defense—abandonment of the contract—has not been specifically addressed in any of the reported Section 515 cases, the consistent and unequivocal rejection of employers' assertion of comparable contract defenses compels only one result here. This Court concludes that Brower's may not assert in this action defenses going to the enforceability of the collective bargaining agreement between it and the Union.[5] Brower's

---

5. Accordingly, the recent decision and order of the National Labor Relations Board ("NLRB" decision resolves) in *Brower's Moving & Storage, Inc.,* 297 NLRB No. 28 (1989) does not affect the

executed the agreement on which the Funds are entitled to, and indeed must, rely. In terms of Section 515, there can be no question that Brower's is obligated under the terms of the agreement to contribute to the Funds.

█ Defendant's two additional arguments are easily dismissed. Defendant argues that since the 1983–1986 collective bargaining agreement has by its own terms expired, the Funds can no longer sue for delinquent payments. Defendant relies on, but completely misreads, *Laborers Health & Welfare Trust Fund v. Advanced Light Weight Concrete Co.*, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988). That case held that Section 515 does not impose upon employers an obligation to contribute to a pension plan beyond the period covered by the collective bargaining agreement. Thus, the case is utterly inapposite, as the Funds are here suing only for amounts due during the years covered by the agreement (1983–1986). In other words, an employer does not escape its obligation for *delinquent* payments merely because the collection action is commenced at a time not covered by a collective bargaining agreement.

Defendant's challenge to this Court's jurisdiction is similarly dismissed. Defendant bootstraps a challenge to this Court's jurisdiction onto its assertion of defenses going to the validity of the collective bargaining agreement. Essentially, defendant argues that a factual predicate to plaintiffs' ERISA claim is the existence of a valid agreement. Thus, defendant argues, the jurisdiction authorized by ERISA for collection actions does not exist until the validity of the contract is established. The only

other arguable basis for this Court's jurisdiction, according to defendant, is § 301(a) of the LMRA, which defendant argues is unavailable.

█ Defendant's understanding is seriously flawed. First, Section 502(e) of ERISA, 29 U.S.C. § 1132(e), unequivocally gives this Court subject matter jurisdiction over this collection action.[6] Even assuming, *arguendo*, that this Court needed separate jurisdiction to resolve the threshold factual question—whether a valid collective bargaining agreement existed—section 301(a) of the LMRA would be the necessary grant. That section provides, in pertinent part, that a federal district court has jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ..." 29 U.S.C. § 185(a). Relying on a line of cases construing the language of Section 301 literally and narrowly, defendant argues that a federal district court has jurisdiction only over suits for *violation* of contracts, but not for determinations of the validity of a contract where validity is the ultimate issue. *See, e.g., NDK Corporation v. Local 1550 of the United Food & Commercial Workers International Union*, 709 F.2d 491, 493 (7th Cir.1983); *Leskiw v. Local 1470, International Brotherhood of Electrical Workers*, 464 F.2d 721 (3d Cir.), *cert. denied*, 409 U.S. 1041, 93 S.Ct. 526, 34 L.Ed.2d 490 (1972); *Hernandez v. Nat'l Packing Co.*, 455 F.2d 1252 (1st Cir.1972). Most circuits, however, have rejected defendant's argument, holding that § 301(a) extends to suits concerning the existence or validity of an agreement. *See IBEW, Local 481 v. Sign–Craft, Inc.*, 864 F.2d 499

result here. That decision resolves issues between the Union and Brower's, litigation from which Section 515 exempts the Funds. Moreover, litigation between the Union and Brower's is far from over: Brower's has informed the Court that review of the entire record in the case will likely be sought, either through a direct appeal to our Court of Appeals pursuant to 29 U.S.C. § 160(e) or by NLRB petition for enforcement of its order pursuant to 29 U.S.C. § 160(c). As discussed earlier in this opinion, the Funds need not await those proceedings to collect on Brower's pension promise.

6. Section 502(e) provides:
(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.
29 U.S.C. § 1132(e)(1).

(7th Cir.1988); *Mack Trucks, Inc. v. Int'l Union, UAW,* 856 F.2d 579 (3d Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1316, 103 L.Ed.2d 585 (1989); *Rozay's Transfer v. Local Freight Drivers Local 208,* 850 F.2d 1321, 1326 (9th Cir.1988); *McNally Pittsburg, Inc. v. Int'l Ass'n of Bridge; Structrual & Ornamental Iron Workers,* 812 F.2d 615, 617–19 (10th Cir.1987); *Bd. of Trustees, Container Mechanics Fund v. Universal Enterprises, Inc.,* 751 F.2d 1177, 1184 (11th Cir.1985); *United Steelworkers of America v. Rome Indus., Inc.,* 437 F.2d 881, 881–883 (5th Cir.1970). In addition, the only two district court decisions in this Circuit to address the issue have agreed with the majority view. *See Kozera v. Electrical Contractors, Local 501,* 714 F.Supp. 644, 648 (S.D.N.Y.1989) (Sprizzo, J.); *Messinger v. Building Contractors Ass'n, Inc.,* 703 F.Supp. 320, 322 (S.D.N.Y.1989) (Mukasey, J.). For the reasons set forth in Judge Mukasey's opinion, *see* 703 F.Supp. at 321–323, this Court concludes that under Section 301(a), a federal district court does have jurisdiction to decide the validity of a collective bargaining agreement. Thus, whether 301(a) jurisdiction were necessary to create 1132(g) jurisdiction or whether 1132(g) jurisdiction were broad enough to cover the issue, this Court is empowered to resolve the threshold factual question. As indicated earlier, because Brower's acknowledges executing the collective bargaining agreement covering the period 1983 through 1986, this Court easily concludes that a valid and enforceable agreement, containing a promise to contribute to the Funds, existed.

■ Finally, because the Funds are entitled to judgment in their favor for delinquent contributions of $239,693.30, Section 1132(g) requires defendant to pay to the Funds, in addition to the unpaid contributions, (i) the Funds' reasonable attorneys fees and costs of this action, (ii) prejudgment interest on the unpaid contributions and (iii) an amount equal to the greater of the interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not in excess of 20% of the amount of the unpaid contributions.[7] There is no question that Section 502(g)'s remedies are *mandatory,* and entirely consistent with the purposes of Section 515 discussed above. *See, e.g., Laborers Health & Welfare Trust Fund,* 108 S.Ct. at 835 ("Congress added these [i.e., Section 502(g)'s] strict remedies to give employers a strong incentive to honor their contractual obligations to contribute and to facilitate the collection of delinquent accounts.")

## CONCLUSION

Plaintiffs motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment for plaintiffs for unpaid contributions in the amount of $239,639.30.

The case is referred to Magistrate Caden for a report and recommendation on the amount of interest, attorneys fees and other sums to which plaintiffs are entitled under 29 U.S.C. § 1132(g).

SO ORDERED.

---

7. Under Section 502(g), "interest on unpaid contributions shall be determined by using the rate provided under the plan.

The Funds' Declaration of Trust provides for a rate of 18% from the date due to the actual date of payment.