HARTFORD FIRE INSURANCE COMPANY; HARTFORD ACCIDENT AND INDEMNITY COMPANY; AND RICHARDSON CONSTRUCTION, INC., APPELLANTS, v. TRUSTEES OF THE CONSTRUCTION INDUSTRY AND LABORERS HEALTH AND WELFARE TRUST; TRUSTEES OF THE CONSTRUCTION INDUSTRY AND LABORERS JOINT PENSION TRUST; AND TRUSTEES OF THE CONSTRUCTION INDUSTRY AND LABORERS VACATION TRUST, RESPONDENTS.

No. 49059

May 28, 2009

208 P.3d 884

*Parker, Nelson & Arin, Chtd.*, and *Theodore Parker, III*, Las Vegas, for Appellant Richardson Construction.

*Watt, Tieder, Hoffar & Fitzgerald, LLP*, and *David R. Johnson*, Las Vegas, for Appellants Hartford Fire Insurance Company & Hartford Accident and Indemnity Company.

*Brownstein Hyatt Farber Schreck, P.C.*, and *Adam P. Segal* and Kirk M. Reynolds, Las Vegas, for Respondents.

*Daniel M. Shanley*, Las Vegas; *DeCarlo, Connor & Shanley* and *Desmond C. Lee*, Los Angeles, California, for Amici Curiae Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund.

*Kevin B. Christensen, Chtd.*, and *Evan L. James* and *Kevin B. Christensen*, Las Vegas, for Amici Curiae Trustees of the Southern

Nevada Glaziers and Fabricators Pension Trust Fund, Glazing Health and Welfare Fund, and the Glaziers Joint Apprenticeship Training Trust.

*Kolesar & Leatham, Chtd.*, and *Alan J. Lefebvre* and *Matthew J. Christian*, Las Vegas, for Amicus Curiae Surety & Fidelity Association of America.

*Laquer, Urban, Clifford & Hodge LLP* and *Michael A. Urban* and *Gia A. McGillivray*, Las Vegas, for Amici Curiae Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Fund, Trustees of the Operating Engineers Journeyman Apprentice Training Trust, Bricklayers & Allied Craftworkers Local 13 Health Benefits Fund, and Bricklayers & Allied Craftworkers Local 13 Defined Contribution Pension Trust.

## OPINION

By the Court, GIBBONS, J.:

The Ninth Circuit Court of Appeals has certified two questions of law to this court concerning various trustees' attempts to collect unpaid contributions owed to employee-benefit trust funds. This matter arose when a public works subcontractor failed to contribute to employee-benefit trust funds, which were created as part of a collective bargaining agreement between the subcontractor and its employees' union. After the subcontractor failed to pay employee-benefit contributions owed to the trusts, the trusts' trustees sued, in federal court, the general contractor and its surety to recover the unpaid contributions. The trustees sued the general contractor under NRS 608.150, which makes general contractors liable for their subcontractors' employees' unpaid wages, including fringe-benefit trust-fund contributions. They sued the surety under NRS 339.035(1), which allows "any claimant who has performed labor or furnished material" under a bonded, public works construction contract and who has not been paid in full, to bring an action on the payment bond to recover the amount due.

Just before trial, however, the surety moved for summary judgment, contending that the trustees had failed to meet a condition precedent to recovery: providing the general contractor with the notice required by NRS 339.035(2), which provides that "[a]ny claimant who has a direct contractual relationship with any subcontractor," but no such direct relationship with the general contractor, "express or implied," may bring an action on a payment bond only if the claimant provided written notice of the claim to the general contractor. In response, the trustees also moved for summary judgment against the surety and the general contractor. The federal district court apparently disagreed that notice was required and granted summary judgment to the trustees. The surety and the general contractor then appealed to the Ninth Circuit Court of Appeals, which subsequently certified to this court two questions under NRAP 5.

The certified questions ask us to determine whether the trustees must comply with NRS 339.035(2)'s notice requirement to recover (1) on the payment bond against the surety, and (2) against the general contractor under NRS 608.150.

The first question's answer is informed by the nature of the trustees' standing to recover against the payment bond under NRS 339.035, which is loosely based on their status as third-party beneficiaries to the labor agreement. That is, because the trustees are third-party beneficiaries, we conclude that they should be able to represent the employees who have claims against the surety. The trustees consequently stand in the employees' shoes for purposes of recovering on the payment bond under NRS 339.035.

The answer to the first question, then, is yes, notice is required to proceed with claims against the bond. Because the employees would be required to provide notice of their claims to the general contractor before recovering on the payment bond under NRS 339.035's clear terms, the trustees, standing in their shoes, likewise are required to do so.

The answer to the second question is no, the trustees are not required to provide notice to proceed with NRS 608.150 claims against the contractor. NRS 608.150 is in a statutory chapter completely separate from NRS 339.035, and NRS 608.150 plainly does not require that the trustees provide the contractor with notice of their claims before seeking to recover from the contractor under that statute.

## FACTS AND PROCEDURAL HISTORY

Appellant Richardson Construction, Inc., was a general contractor on various southern Nevada public works projects. To secure payment for any subcontracted labor and materials provided to the public works construction projects, as NRS 339.035 requires, Richardson entered into bond agreements with appellant Hartford Fire Insurance Company and its related entity, appellant Hartford Accident and Indemnity Company (collectively, Hartford). Under the bond agreements, Hartford and Richardson were jointly and severally liable for labor, materials, and equipment contributed to the projects. Hartford asserts, moreover, that as part of the bond agreements, Richardson agreed to indemnify Hartford for any recovery on the payment bond.

Richardson then subcontracted some of its work to Desert Valley Landscape & Maintenance, Inc. Desert Valley was party to a "memorandum labor agreement" with the local chapter of a laborers' union, Laborers' International Union of North America, Local 872. Under the labor agreement, Desert Valley was required to render payments, *i.e.*, fringe-benefit contributions, to certain employee-benefit trust funds administered on behalf of its employees, includ-

ing those who worked on the Richardson public works project. The trust funds were created under an agreement between Local 872 and various southern Nevada contractor associations, pursuant to the federal Labor Management Relations Act, 29 U.S.C. § 186(c)(5) (2006) (describing a valid employee-benefit trust fund), and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1002 (2006) (defining an employee-benefit plan). They provided pension, health coverage, and vacation benefits to employees of companies that were parties to labor agreements with Local 872.

Although Desert Valley was required to render payments to the trusts for Richardson projects' employees, it never did so. Consequently, in September 1998, respondents, the trusts' trustees, instituted an action against Desert Valley in federal district court, asserting a cause of action under ERISA, which generally provides that an employer must comply with its obligation arising under a labor agreement to make employee-benefit contributions. *See* 29 U.S.C. § 1145 (2006). According to Hartford and Richardson, Desert Valley answered the complaint but later filed for bankruptcy, and as a result, the trustees' ERISA action against Desert Valley remained inactive for several years, until the trustees amended the complaint to include state-law-based claims against Hartford and Richardson. The claims against Hartford were based on NRS 339.035, which allows any claimant who has performed labor or furnished material to bring an action on the contractor's payment bond for any unpaid amount. The claims against Richardson were based on NRS 608.150, which makes a general contractor liable for a subcontractor's failure to pay for labor and materials.

Although the federal district court ultimately entered a default judgment against Desert Valley, the action proceeded with respect to Hartford and Richardson, and shortly before trial, Hartford moved for summary judgment. In its motion, Hartford argued that the trustees had failed to meet a condition precedent to recovering on the payment bond: providing Richardson with the notice required by NRS 339.035(2), which provides that claimants who have direct contractual relationships with the subcontractor, but not with the general contractor, must give written notice to the general contractor before making a claim on the bond.

The trustees opposed Hartford's motion and moved for summary judgment against Hartford and Richardson. With respect to Hartford, the trustees argued that, because they did not have a direct contractual relationship with the subcontractor, which NRS 339.035(2) ties to the notice requirement, they were not obligated to provide Richardson with notice of the claims before bringing an action on the payment bond. As regards Richardson, the trustees asserted that no issues of fact remained with respect to Desert Valley's failure to pay its workers for their labor and materials, given the default judg-

ment entered against Desert Valley, and thus, Richardson was liable for that failure under NRS 608.150's clear terms. The federal district court granted summary judgment to the trustees. Hartford and Richardson then appealed to the Ninth Circuit Court of Appeals.

In a published order, the Ninth Circuit then certified two legal questions to this court under NRAP 5:

> In order to recover against a defendant surety under [NRS 339.035(1)], must plaintiff trustees, who are not in a direct contractual relationship with the subcontractor, comply with the notice requirements of [NRS 339.035(2)]?
>
> In order to recover against a defendant contractor under [NRS 608.150] in a case where unpaid trust contributions are covered by a statutory payment bond, *see* [NRS 339.025], must plaintiff trustees, who are not in a direct contractual relationship with the subcontractor, comply with the notice requirements of [NRS 339.035(2)]?

*Trustees of Const. Industry v. Hartford Fire Ins.*, 482 F.3d 1064, 1066 (9th Cir. 2007).

We accepted the certified questions and directed briefing. In addition to the parties' briefs, three amici curiae briefs supporting the trustees and one amicus brief supporting Hartford and Richardson have been filed, as permitted.[2]

## DISCUSSION

We may answer questions of law certified to us by a federal court when (1) our answers to the certified questions may be determinative of part of the federal case, (2) there is no clearly controlling Nevada precedent, and (3) the answers to the certified questions will help settle important questions of law. NRAP 5(a); *Volvo Cars of North America v. Ricci*, 122 Nev. 746, 137 P.3d 1161 (2006). Our consideration of the questions here is appropriate because the answers will likely determine the matter pending in the Ninth Circuit

---

[2]In support of the trustees, Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, Southwest Carpenters Training Fund, Trustees of the Southern Nevada Glaziers and Fabricators Pension Trust Fund, Glazing Health and Welfare Fund, the Glaziers Joint Apprenticeship Training Trust, Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Fund, Trustees of the Operating Engineers Journeyman Apprentice Training Trust, Bricklayers & Allied Craftworkers Local 13 Health Benefits Fund, and Bricklayers & Allied Craftworkers Local 13 Defined Contribution Pension Trust have filed amicus briefs. In support of Hartford and Richardson, the Surety & Fidelity Association of America has filed an amicus brief.

Court of Appeals and no clearly controlling Nevada precedent exists with respect to the questions, which raise important legal issues.

Both certified questions concern NRS 339.035, which provides as follows:

> 1. Subject to the provisions of subsection 2, any claimant who has performed labor or furnished material in the prosecution of the work provided for in any contract for which a payment bond has been given . . . and who has not been paid in full . . . may bring an action on such payment bond in his own name to recover any amount due him for such labor or material[.]
>
> 2. Any claimant who has a direct contractual relationship with any subcontractor of the contractor who gave such payment bond, but no contractual relationship, express or implied, with such contractor, may bring an action on the payment bond only [if he provided certain written notices of the claim to the contractor.]

Although Nevada precedent concerning NRS 339.035 is sparse, the statute is modeled after federal law, the Miller Act, 40 U.S.C. §§ 270b and 270c (1935); *see Garff v. J. R. Bradley Co.*, 84 Nev. 79, 85, 436 P.2d 428, 432 (1968) (ZENOFF, J., dissenting), and thus, federal caselaw interpreting the Miller Act is persuasive in addressing issues surrounding NRS 339.035. *See Edgington v. Edgington*, 119 Nev. 577, 584, 80 P.3d 1282, 1288 (2003) (providing that when a federal statute is adopted in a Nevada statute, using substantially similar language, " 'a presumption arises that the [L]egislature knew and intended to adopt the construction placed on the federal statute by federal courts' " (quoting *State, Bus. & Indus. v. Granite Constr.*, 118 Nev. 83, 88, 40 P.3d 423, 426 (2002))).

As an initial matter, although the certified questions presuppose that the trustees have standing to assert claims against a surety under NRS 339.035, this court has not before so provided. Accordingly, as analyzing the trustees' standing in the first instance informs our answers to the certified questions, we first address the trustees' standing to file a claim against a payment bond under NRS 339.035. Next, we will answer the Ninth Circuit's certified questions, first addressing whether the trustees were required to comply with NRS 339.035(2)'s notice requirement to recover on the payment bond, then addressing whether the trustees were required to comply with NRS 339.035(2)'s notice requirement to recover from Richardson under NRS 608.150.[3]

---

[3]Hartford and Richardson also provide argument (1) with respect to whether the trustees may recover liquidated damages and attorney fees pursuant to the payment bond and (2) that the trustees are effectively seeking amounts that

*The trustees' standing to file a claim on the payment bond under NRS 339.035*

With regard to the trustees' standing to file a claim against the payment bond under NRS 339.035, subsection 1 of that statute provides that "any claimant *who has performed labor or furnished material* in the prosecution of the work provided for in any contract for which a payment bond has been given . . . and who has not been paid in full" may bring an action on the bond. (Emphasis added.) Subsection 2 of NRS 339.035, read in accordance with federal interpretations, further limits "claimants" to those persons who have either a direct contractual relationship with the general contractor or a direct contractual relationship with a subcontractor and who provide notice to the general contractor. *See, e.g.*, *MacEvoy Co. v. United States*, 322 U.S. 102, 108 (1944). Here, the trustees provided no labor or materials and have no direct contractual relationship with Richardson; their relationship with Desert Valley at best renders them third-party beneficiaries of the labor agreement between Desert Valley and Local 872. *See Lipshie v. Tracy Investment Co.*, 93 Nev. 370, 379, 566 P.2d 819, 824-25 (1977) (noting that an individual obtains third-party-beneficiary status when contracting parties demonstrate a clear intent to benefit the individual, a third party, by their contract).

While the parties agree that the trustees are third-party beneficiaries and that their status as such impacts their standing to bring claims under NRS 339.035, they disagree on how their third-party-beneficiary status affects their standing. Hartford and Richardson essentially argue that the trustees "stand in the shoes" of the laborers. The trustees, on the other hand, contend that they are "preferred" third-party beneficiaries, given their role under ERISA to protect employee pensions and vacation and health benefits, meaning that they have special standing to bring NRS 339.035 claims, broader than that of the employees that they represent.

We agree that the trustees are third-party beneficiaries under the memorandum agreement. But while we have recognized that a third-party beneficiary has a direct right of action against the promisor in contract, *Hemphill v. Hanson*, 77 Nev. 432, 436 n.1, 366 P.2d 92, 94 n.1 (1961), that right is not necessarily carried forward to claims against a nonparty surety, which are allowable by statute. *See Morelli v. Morelli*, 102 Nev. 326, 329, 720 P.2d 704, 706 (1986) (providing that, while a third-party beneficiary is generally "subject to the defenses that would be valid as between the parties," the no-

Richardson already paid to the Labor Commissioner pursuant to the Commissioner's claim on behalf of the employees under NRS 608.150. But those issues could not properly be, and were not, included in the Ninth Circuit's certified questions, and thus, they are not before us.

tion that a third-party beneficiary steps into the shoes of a contracting party is a "misstatement of the law"); *see also* Restatement (Second) of Contracts § 309 cmt. c (1981) (providing that a third-party beneficiary's right to enforce a contract is "direct, not merely derivative"). Thus, their third-party-beneficiary status alone is insufficient to confer the trustees with standing under NRS 339.035.

### *The trustees' status as constructive assignees of the workers' claims under NRS 339.035*

Nevertheless, whether the trustees' have standing to sue under NRS 339.035 is closely tied to their third-party-beneficiary status. In *United States v. Carter*, 353 U.S. 210, 211-12 (1957), the United States Supreme Court addressed whether trustees are entitled to recover unpaid contributions to employee-benefit trust funds under the federal Miller Act, 40 U.S.C. §§ 270b and 270c (1935), a statute nearly identical to NRS 339.035. At that time, the Miller Act provided that " '[e]very person who has furnished labor or material in the prosecution of the work provided for in [a public works contract] and who has not been paid in full therefore . . . shall have the right to sue on such payment bond . . . for the sum or sums justly due him.' "[4] *Carter*, 353 U.S. at 215 (quoting 40 U.S.C. § 270b(a) (1935)).

The U.S. Supreme Court acknowledged that the trustees were "neither persons who have furnished labor or material, nor [were] they seeking 'sums justly due' to persons who have furnished labor or material." *Id.* at 218. Nevertheless, after analyzing cases arising under a predecessor of the Miller Act, the Heard Act of 1894, *see* 40 U.S.C. § 270 (1934), which established that "assignees of the claims of persons furnishing labor or material" came within a statutory bond's protection, the Supreme Court noted that the analyses applied likewise to the Miller Act, which, the Supreme Court concluded, was even broader and more liberal in its scope than the Heard Act. *Carter*, 353 U.S. at 219. Thus, without determining whether any assignment occurred for Miller Act purposes, the Supreme Court noted that "[i]f the assignee of an employee can sue on the bond, the trustees of the employees' fund should be able to do so. . . . The trustees stand in the shoes of the employees and are entitled to enforce their rights." *Id.* at 219-20; *cf. U.S. Design &*

---

[4]The relevant provision of the federal Miller Act currently reads as follows:

> [a] person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor. . . . The action must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.

40 U.S.C. § 3133(b)(2) (2006).

*Constr. v. I.B.E.W. Local 357*, 118 Nev. 458, 50 P.3d 170 (2002) (recognizing that employee-benefit trust-fund trustees are representatives of the employees earning the trust-fund contributions).

Given the trustees' third-party-beneficiary status, the Supreme Court's analysis in *Carter* is persuasive here, and thus, we conclude that, like assignees, the trustees "stand in the shoes" of the workers and should be permitted to recover under NRS 339.035. *Edgington v. Edgington*, 119 Nev. 577, 584, 80 P.3d 1282, 1288 (2003) (providing that when a federal statute is adopted in a Nevada statute, using substantially similar language, " 'a presumption arises that the [L]egislature knew and intended to adopt the construction placed on the federal statute by federal courts' " (quoting *State, Bus. & Indus. v. Granite Constr.*, 118 Nev. 83, 88, 40 P.3d 423, 426 (2002))). Indeed, in *U.S. Design & Construction v. International Brotherhood of Electrical Workers Local 357*, 118 Nev. 458, 50 P.3d 170, this court, without analysis, recognized that employee-benefit trust-fund trustees represent the employees who earned the trust-fund contributions by providing labor. Accordingly, the trustees have standing as representatives of the claimants. We do not agree, however, that the trustees' third-party-beneficiary status gives them any rights under NRS 339.035 over and above what the Legislature has given to the persons whom they represent and who are addressed in the statute—the employees.

*NRS 339.035's notice requirement, as applied to claims against the surety*

As noted, NRS 339.035(2) provides that "[a]ny claimant who has a direct contractual relationship with any subcontractor of the contractor who gave such payment bond, but no contractual relationship, express or implied, with such contractor, may bring an action on the payment bond" if he provides certain notice of the claim to the contractor. Thus, NRS 339.035 foresees two types of claimants: those who have a contractual relationship with the contractor and those who have a contractual relationship with only the subcontractor. *Cf. MacEvoy Co. v. United States*, 322 U.S. 102 (1944). Those claimants who have a contractual relationship with only the subcontractor must, under NRS 339.035(2), serve notice on the contractor of the labor or materials being provided and the amount claimed. Because the trustees represent the subcontractor's employees in wage claims made under NRS 339.035, they stand in the employees' shoes and are required, as the employees would be, to provide notice to Richardson to recover on the payment bond. Indeed, this court already has acknowledged the importance of providing the contractor with notice to recover on the payment bond. *Garff v. J. R. Bradley Co.*, 84 Nev. 79, 83, 436 P.2d 428, 431 (1968). In

particular, in an action by suppliers of labor and material to recover on a payment bond, this court analyzed NRS 339.035(2)'s notice requirement, acknowledging that NRS 339.035 "creates a remedy in circumstances where none existed before," and thus concluding that "[i]t is not unfair to demand compliance with the preconditions for suit." *Id.*

Nevertheless, the trustees contend that they were not required to provide notice under NRS 339.035's clear terms, for public policy reasons, and as a matter of practicality.

### NRS 339.035's notice-requirement language

With respect to the statute's language, the trustees point out that only a "claimant who has a direct contractual relationship with any subcontractor of the contractor" is required to provide notice. As third-party beneficiaries of the memorandum labor agreement, the trustees maintain, they do not have a direct contractual relationship with the subcontractor, Desert Valley, and thus, they were not required to provide notice to Richardson to recover on the payment bond. This argument lacks merit, however, in light of our conclusion that the trustees stand in the employees' shoes for NRS 339.035 purposes. As only claimants with a direct contractual relationship to the contractor or a subcontractor may sue on the payment bond, the trustees are either standing in the place of those persons, subject to all of the same requirements, or they have no standing to sue the surety at all.

### Notice in light of public policy

With respect to their argument that public policy overrides the statutory prerequisite, the trustees primarily rely on reasoning set forth by the U.S. Supreme Court in *Lewis v. Benedict Coal Corp.*, 361 U.S. 459 (1960). In *Lewis*, as in this case, trustees of employee-benefit trust funds sought to recover an employer's unpaid contributions to the trust funds. *Id.* at 460-62. The employer had withheld contributions associated with time periods during which union work stoppages and strikes occurred, believing that those events violated the labor agreement. *Id.* at 462. According to the employer, because the trustees were third-party beneficiaries of the labor agreement, they were subject to the same defense as would have been valid against the employees, *viz.*, that the union violated the labor agreement by engaging in strikes and work stoppages, and thus, the employees were not entitled to benefits for that time period. *Id.*

Therefore, in *Lewis*, the U.S. Supreme Court considered whether the employer may assert the union's breaches of the labor agreement as a defense against the trustees, based on their third-party beneficiary status. *Id.* at 464. After considering "the interests of the

union, the [employer], and the trustees in the fund under the collective bargaining agreement," *id.* at 464, the Court noted that because of the trustees' important role as third-party beneficiaries under the labor agreement—to provide "security for employees and their families to enable them to meet problems arising from unemployment, illness, old age or death"—a labor agreement is not a typical third-party contract and the typical third-party-beneficiary contract principles do not apply. *Id.* at 468-69. Based on that determination, the Supreme Court concluded that "the parties to a collective bargaining agreement must express their meaning in unequivocal words before they can be said to have agreed that the union's breaches of its promises should give rise to a defense against the duty assumed by an employer to contribute to a welfare fund" meeting the requirements of the Labor Management Relations Act. *Id.* at 470-71; *see also* 29 U.S.C. § 186(c)(5) (1947).

The trustees rely on that conclusion and point to several federal court decisions adopting its reasoning, *see, e.g., Cement and Concrete Workers Dist. v. Frascone*, 68 F. Supp. 2d 166 (E.D.N.Y. 1999); *Benson v. Brower's Moving & Storage, Inc.*, 726 F. Supp. 31 (E.D.N.Y. 1989); *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769 (9th Cir. 1986); *Southern Cal. Retail Clerks Union v. Bjorklund*, 728 F.2d 1262 (9th Cir. 1984), to argue that, although they are third-party beneficiaries of the labor agreement, because of their unique role to protect employee pensions and health benefits, public policy supports interpreting NRS 339.035 more broadly as to them.

But the circumstances in *Lewis* and its holding are ultimately inapposite to this case. Although *Lewis* involved a trust fund that met Labor Management Relations Act requirements, it did not concern a claim against a surety pursuant to that law. *Lewis*, 361 U.S. at 461-62. Instead, the trustees instituted a contract action against the contractor. Thus, in *Lewis*, the Supreme Court analyzed the trustees' unique role as third-party beneficiaries of a collective bargaining agreement, not as claimants under the federal Miller Act.[5] *Id.* at 468.

In addition, *Lewis* concerned an employer's attempt to use the union's breaches of the collective bargaining agreement against the trustees to justify withholding its promised contributions to

---

[5]While subsequent federal court cases, including those relied on by the trustees, have used *Lewis*'s third-party-beneficiary discussion when considering trustees' significant role to protect employee-benefit funds, *see, e.g., Cement and Concrete Workers Dist. v. Frascone*, 68 F. Supp. 2d 166 (E.D.N.Y. 1999); *Benson v. Brower's Moving & Storage, Inc.*, 726 F. Supp. 31 (E.D.N.Y. 1989); *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769 (9th Cir. 1986); *Southern Cal. Retail Clerks Union v. Bjorklund*, 728 F.2d 1262 (9th Cir. 1984), none determined that that unique status excused compliance with statutory requirements for recovering unpaid contributions to employee-benefit trust funds.

employee-benefit trust funds. *Lewis*, 361 U.S. at 464. Unlike *Lewis*, this particular issue does not concern any defenses regarding a breach of the collective bargaining agreement, but rather a failure to comply with statutory notice requirements. Thus, the Supreme Court's holding—that parties to a collective bargaining agreement must unequivocally agree that a union's breaches of the agreement relieve the contractor of its obligation to contribute to employee-benefit trust funds—is inapposite to this case.[6] *Id.* at 470-71.

Moreover, as Hartford and Richardson contend, notwithstanding various courts' conclusions that employee-benefit trust-fund trustees are not typical third-party beneficiaries, the trustees have pointed to no decision concluding that a trustee is excluded from providing notice to a contractor to recover on a payment bond under the federal Miller Act or states' "Little Miller Acts."[7] Indeed, the cases in which courts have concluded that the usual third-party beneficiary defenses did not apply did not concern the trustees' compliance with the Miller Act's requirements. *See, e.g.*, *Cement and Concrete Workers Dist.*, 68 F. Supp. 2d 166; *Benson*, 726 F. Supp. 31; *Southwest Administrators, Inc.*, 791 F.2d 769; *Southern Cal. Retail Clerks Union*, 728 F.2d 1262. As Hartford and Richardson assert, then, while courts have concluded that trustees are not typical third-party beneficiaries, no court has concluded that, in light of their special status, they are not required to comply with the federal Miller Act's or states' versions of the Miller Act's notice requirement.

Thus, while employee-benefit trust funds serve a significant purpose that might provide some flexibility when trustees attempt to re-

---

[6]The concept that a union's breaches of a collective bargaining agreement generally may not be asserted against employee-benefit trust-fund trustees to relieve the contractor of an obligation under the agreement to make employee-benefit trust-fund contributions is similar to the theory noted above that, because a third-party beneficiary has a direct right to enforce a contract, the promisor may not use defenses arising from separate transactions to defeat the third-party beneficiary's interest in the contract. *See* Restatement (Second) of Contracts § 309 cmt. c (1981) (providing that, because a third-party beneficiary's right to enforce a contract is a direct, not derivative right, "claims and defenses of the promisor against the promisee arising out of separate transactions do not affect the right of the beneficiary," except in accordance with the contract's terms).

[7]Similarly, Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund, in their amicus brief, contend that employee-benefit trust funds detrimentally rely on an employer's promise under a collective bargaining agreement to pay employee benefits, and thus, trustees are not subject to the defenses that might otherwise be available to the employer as the promisor. *Hansen v. Proctor*, 74 N.W.2d 281, 284-85 (Minn. 1955). But the case on which the Southwest Carpenters Trusts rely to support their argument concerned an action against the promisor based on the parties' contract. *Id.* at 282-83. As noted, this case does not concern an action on the parties' contract, the collective bargaining agreement, but rather a statutory claim implicating that agreement.

cover funds under the Miller Act, we are unwilling to ignore an express legislative prerequisite to recovery against a surety. If the Legislature intends for trustees to recover under NRS 339.035 without complying with the notice prerequisite, it is perfectly capable of modifying the statute to so provide.

### Practicality of providing notice

The trustees also argue, however, that as a practical matter notice should be a precondition for a suit on the payment bond only for those in a direct contractual relationship with the subcontractor. This is so, they assert, because trustees have no reasonable basis to know what work is occurring, since they generally do not have direct access to project or job files that might document a laborer's time and material furnished to a project. Essentially, the trustees contend that notice is unnecessary because contractors are in a better position to acquire information on which a payment bond claim may be made, since they have continuing access to job sites and files. But this court already has acknowledged the importance of providing contractors with notice, regardless of a contractor's access to the information that may underlie a statutory bond claim. Specifically, this court noted that

> contractors frequently are aware of the identity of the suppliers of materials to subcontractors; frequently [they] know the identity of those performing labor for the subcontractor. However, such awareness or knowledge, standing alone, does not erase the duty which the [L]egislature has placed upon claimants to give . . . notices before becoming eligible to file suit on a payment bond.

*Garff v. J. R. Bradley Co.*, 84 Nev. 79, 83, 436 P.2d 428, 431 (1968). Thus, although a contractor may indeed be aware of potential claimants and claims, as the trustees suggest,[8] this court already has stated the importance that claimants, like the trustees, nonetheless comply with statutory mandate to provide the contractor with notice. Moreover, as amicus curiae Surety & Fidelity Association of America indicates, to require that those in a direct contractual relationship with the subcontractor provide the contractor with notice of a claim on the payment bond, while absolving those who represent them, such as the trustees, from such a requirement, is unsound. *See*

---

[8]Trustees of the Southern Nevada Glaziers and Fabricators Pension Trust Fund, Glazing Health and Welfare Fund, and the Glaziers Joint Apprenticeship Training Trust, in their amicus brief, point to NRS 338.070(4), which requires contractors to maintain detailed labor records. According to the Glaziers Trusts, those detailed records obviate the need for the trustees to provide Richardson with notice of their claims on behalf of the Desert Valley's employees.

*MacEvoy Co. v. United States*, 322 U.S. 102, 107-08 (1944) (noting that it would be "absurd" to require notice from persons in direct contractual relationship with a subcontractor to recover on a bond but not from more remote claimants). Accordingly, we conclude that trustees' claims against a surety are subject to NRS 339.035's notice requirements.[9]

*The trustees' claim under NRS 608.150 and NRS 339.035's notice requirement*

Turning to Hartford and Richardson's contention that NRS 339.035(2)'s notice requirement applies to claims under NRS 608.150, NRS 608.150(1) provides that

> [e]very original contractor making or taking any contract in this State for the erection, construction, alteration or repair of any building or structure, or other work, shall assume and is liable for the indebtedness for labor incurred by any subcontractor or any contractors acting under, by or for the original contractor in performing any labor, construction or other work included in the subject of the original contract . . . .

This court already has determined that employee-benefit trust contributions constitute "indebtedness for labor," *Tobler and Oliver v. Bd. Trustees*, 84 Nev. 438, 442, 442 P.2d 904, 906-07 (1968), and

---

And Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Fund, Trustees of the Operating Engineers Journeyman Apprentice Training Trust, Bricklayers & Allied Craftworkers Local 13 Health Benefits Fund, and Bricklayers & Allied Craftworkers Local 13 Defined Contribution Pension Trust, in their amicus brief, point to NAC 338.092(1)'s and NAC 338.094(1)(c)'s requirements that a contractor maintain detailed records regarding labor on its projects to argue that Richardson had sufficient notice in this case to obviate the trustees' need to comply with NRS 339.035's notice requirement.

[9]The trustees also contend that ERISA gives them standing as claimants under NRS 339.035, independent of their third-party-beneficiary status and any actual or constructive assignment of the employees' claims. But even if the trustees' standing is based on ERISA, which we need not resolve, notice is still a requirement under the Miller Act. Indeed, even the case relied on by the trustees to argue that their standing under the Miller Act is based on ERISA required that the trustees provide the contractor with notice of the payment bond claims. *See U.S. for Use & Benefit of IBEW v. Hartford Ins.*, 809 F. Supp. 523, 526 (E.D. Mich. 1992) (discussing employee-benefit trust-fund trustees' compliance with the federal Miller Act's notice requirement, after determining that ERISA provided the trustees with a statutory right and duty to enforce the payment of trust-fund contributions). Accordingly, although under any ERISA-based standing theory the trustees would appear to have direct authority to recover unpaid contributions, nothing therein abrogates NRS 339.035's notice requirement.

that trustees of employee-benefit trusts have standing to sue under NRS 608.150 as representatives of the employees. *U.S. Design & Constr. v. I.B.E.W. Local 357*, 118 Nev. 458, 50 P.3d 170 (2002).

With respect to whether NRS 339.035(2) also requires trustees to provide notice when attempting to recover unpaid funds directly from the contractor under NRS 608.150, Hartford and Richardson contend that to allow otherwise effectively creates an end-run around NRS 339.035(2)'s notice requirement. Specifically, Hartford and Richardson maintain that, although NRS 608.150 allows a claimant to recover directly from the contractor, whereas NRS 339.035 allows a claimant to recover on the payment bond, the effect is the same, since Richardson ultimately will have to indemnify Hartford for any payment on the bond. Thus, they assert, because Richardson ultimately will be liable whether under NRS 608.150 or NRS 339.035, the preconditions to recovering under NRS 339.035 should also apply under NRS 608.150.

To support that argument, Hartford and Richardson point to authority recognizing that "[w]hen two statutes are clear and unambiguous but conflict with each other when applied to a specific factual situation, an ambiguity is created and [this court] will attempt to reconcile the statutes." *Szydel v. Markman*, 121 Nev. 453, 457, 117 P.3d 200, 202-03 (2005). But Hartford and Richardson's argument assumes that NRS 608.150 and NRS 339.035 conflict. That is not the case. In particular, NRS 339.035 allows a claimant to recover on the payment bond, while NRS 608.150 allows a claimant to recover directly from the general contractor. Even if Richardson is required to indemnify Hartford for any recovery by the trustees on the payment bond, that result arises under the terms of the parties' bond agreement or principles of equity, not the statutes. *See Medallion Dev. v. Converse Consultants*, 113 Nev. 27, 32, 930 P.2d 115, 119 (1997) (noting that indemnity is " '[a] contractual or equitable right under which the entire loss is shifted from the tortfeasor who is only technically or passively at fault to another who is primarily or actively responsible' " (quoting *Black's Law Dictionary* 769 (6th ed. 1991))), *superseded in part by statute*, NRS 17.245, *as recognized in Doctors Company v. Vincent*, 120 Nev. 644, 654, 98 P.3d 681, 688 (2004).

Further, and significantly, NRS 608.150's plain language does not require that notice be provided to a contractor for its enforcement. Indeed, NRS 608.150(3) specifically grants a right of enforcement to the district attorney, which has been extended to certain private parties, *U.S. Design & Constr.*, 118 Nev. at 462, 50 P.3d at 172, and that right is not tied to a notice requirement. Thus, to determine that NRS 608.150 imposes a notice requirement for its enforcement would contravene principles of statutory construction, which we

will not do here. Consequently, NRS 608.150 does not include within its provisions NRS 339.035(2)'s requirement that the general contractor receive notice before trustees can recover unpaid contributions owed to employee-benefit trusts.

## CONCLUSION

Under NRS 339.035's clear terms, a subcontractor's employees are required to provide notice to the general contractor of their claims for the subcontractor's unpaid contributions before recovering on the contractor's payment bond. Likewise, because employee-benefit trust-fund trustees are third-party beneficiaries of the subcontractor's promise to make the contributions, we conclude that they represent the employees and, thus, are permitted to make claims on the payment bond. Since they stand in the employees' shoes, they also are required to provide the contactor with notice of their claims before recovering against the payment bond under NRS 339.035. But as NRS 608.150 plainly does not require that the trustees provide the contractor with notice of their claims before recovering from the contractor, no such notice is necessary to recover under that statute. We thus answer the Ninth Circuit's questions by concluding that trustees must provide NRS 339.035 notice as to claims against a surety under that chapter, but not as to claims against a contractor under NRS 608.150.

HARDESTY, C.J., PARRAGUIRRE, DOUGLAS, CHERRY, and SAITTA, JJ., concur.